IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JAMES TODD SMITH, )
)
              **Plaintiff,** )
)
v. ) Civil Action No. 7:14cv406
)
CAROLYN W. COLVIN, )
**Commissioner of Social Security,** )
)
              **Defendant.** )

### MEMORANDUM OPINION[1]

Plaintiff James Todd Smith ("Smith") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Smith alleges that the ALJ erred because she (1) failed to find that Smith's medical condition met listing 12.05(C), and (2) failed to find that Smith was limited to sedentary work, which would entitle him to a finding of disability pursuant to the medical vocational guideline 201.17. I find that substantial evidence supports the ALJ's decision that Smith did not meet listing 12.05(C) and that Smith was not limited to sedentary work. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 16) and **DENY** Smith's Motion for Summary Judgment. Dkt. No. 12.

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Smith failed to demonstrate that he was disabled

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

under the Act.² Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Smith filed for SSI and DIB on October 28, 2010, claiming that his disability began on August 18, 2008. R. 233–35. The Commissioner denied the application at the initial (R. 124–33) and reconsideration levels of administrative review. R. 135–40. On September 5, 2012, ALJ Anne V. Sprague held a hearing to consider Smith's claim. R. 33–63. Smith was represented by an attorney at the hearing, which included testimony from Smith and vocational expert Mr. Hileman. Id.

On March 13, 2013, the ALJ entered her decision analyzing Smith's claim under the familiar five-step process,³ and denying his claim for benefits. R. 12–24. The ALJ found that

---

² The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

³ The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

Smith suffered from the severe impairments of degenerative disc disease of the back and depression. R. 14. The ALJ also concluded that Smith was blind in his right eye. R. 17. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 15. The ALJ further found that Smith had the residual functional capacity ("RFC") to perform light work. R. 25. Specifically, the ALJ found that Smith could occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl; that he should never climb ladders, ropes, or scaffolds; and that he should avoid concentrated exposure to unprotected heights and dangerous equipment. R. 17. The ALJ also found that Smith was able to perform simple, routine, repetitive job tasks; to maintain reliable attendance at work; and to accept instructions from supervisors and deal appropriately with co-workers and the public. Id. The ALJ determined that Smith was able to complete a normal workweek without interruptions from his depressive symptoms and cognitive limitations and that he could handle the usual stressors of competitive work when not faced with strict, high-production demands. Id. The ALJ determined that Smith could not return to his past relevant work, but that he could work at jobs that exist in significant numbers in the national economy, such as garment folder and packager, merchandise marker, and cafeteria attendant. R. 23–24. Thus, the ALJ concluded that Smith was not disabled. On June 6, 2014, the Appeals Council denied Smith's request for a review of the ALJ's decision, and this appeal followed. R. 1–3.

## SOCIAL AND VOCATIONAL HISTORY

Smith was born in October 1964 (R. 235) and was, at 43 years old, considered a younger individual on the date of his alleged disability onset date in August 2008. 20 C.F.R. § 404.1563(c). Smith completed the eighth grade before voluntarily leaving school to pursue a job as a mechanic. R. 57. He worked as a mechanic from at least March 1995 until August 2008. R. 278. Smith noted on his Function Report that he could feed his dog and let her out, that he had no

3

problems dressing, bathing, and otherwise taking care of his personal needs, that he did not need reminders to take medications, and that he did not do household chores. R. 288–89. He reported that he did not prepare meals, but that this was because he could not cook. R. 289. He stated he was able to grocery shop, pay bills, count change, and handle a savings account, but he could not use a check book or money orders because he could "not write good enough." R. 290.

## ANALYSIS

Smith alleges that the ALJ erred by (1) failing to find that his medical condition met listing 12.05 and (2) failing to find that he was limited to sedentary work and was therefore disabled pursuant to the medical vocational guidelines. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision on both issues, and I affirm her decision.

### Listing 12.05

Smith contends that the ALJ erred because she concluded that his condition did not meet or medically equal the listing contained in § 12.05 for an intellectual disability. Specifically, Smith argues that he met the criteria of § 12.05(C) because he had a valid verbal, performance, or full scale IQ of 60 through 70; he had an additional physical impairment consisting of his back injury; and his intellectual limitations initially manifested before he was 22 years old.

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of impairments automatically result in a finding of disability. The listings are designed to reflect impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v.

Astrue, 3:09–CV–00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)).

Listing 12.05(C) for intellectual disability states the following:

12.05 Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
...
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05.

The structure of this listing is different than that of other mental disorder listings in that it contains "an introductory paragraph with the diagnostic description for intellectual disability" as well as four sets of criteria in Paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.00(A). Thus, Listing 12.05(C) presents a three-pronged proof requirement. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). First, Prong 1 requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." § 12.05. Next, Prong 2 requires a valid verbal, performance, or full scale IQ score of 60 through 70. § 12.05(C). Finally, Prong 3 requires that the claimant establish "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. The ALJ concluded that Smith satisfied Prongs 2 and 3 because she found that he had a valid verbal IQ score of 68 and a full scale IQ of 67 (R. 17) and that he had degenerative disc disease, a physical condition that would impose "an

additional and significant work-related limitation of function." R. 16. Smith argues that the ALJ erred at Prong 1 because she concluded Smith's intellectual deficits did not initially manifest during his developmental period. Prongs 2 and 3 are not at issue in this appeal.

Prong 1

Smith argues that his intellectual deficits initially manifested before he was 22 years old. As proof, he offers his testimony that he only completed the eighth grade, that he was in special education classes while in school, and that he could not read or write. However, Smith is not required to show only that he had an intellectual disability prior to his twenty-second birthday; he must also show that he had "deficits in adaptive functioning" that manifest themselves prior to age 22. Substantial evidence supports the ALJ's determination that Smith had not satisfied the "requisite deficits in adaptive functioning for 12.05C." R. 17. In coming to this conclusion, I reviewed Smith's school records, the opinions of the medical experts involved in this case, and Smith's past work experience. Each of these will be addressed in turn.

    a. School Records

The school records in this case do not support a finding that Smith had an intellectual disability that manifest itself before he was 22 years old. Though the records are somewhat hard to read, they do not indicate Smith was ever assigned to special education classes. R. 338–37. In the 1972-73 school year (third grade), Smith's records show he received an "S" or "Satisfactory" rating in most of the evaluated areas. R. 343. In three of his four academic subjects, Smith was performing "at grade level" and in one subject, he performed "below grade level." Id. He was promoted from the third to the fourth grade. Id. In the next school year, Smith's grades are more difficult to interpret; however, he did receive all "S" marks and had perfect attendance. Id. While his records over the next several years indicate more "below grade level" notations, Smith was

6

always promoted to the next grade and received "S" ratings for the majority of the evaluated areas. Id.

The most telling evidence in Smith's school records can be found at R. 345 and R. 346. During the 1977-78 school year, a "General Estimate of Pupil" form was completed for Smith. R. 345. Though it is unclear who composed this evaluation, it is a hand-written evaluation by someone who appears to be familiar with Smith's academic performance. In it, the writer notes that Smith "seems to be undergoing a confusing and frustrating developmental stage" and that Smith was having "trouble with adults and school" likely due to "academic failure and the resulting pressures of teachers and peers." R. 345. While the report documents Smith's academic difficulties, it says nothing about mental retardation or any sort of significant intellectual limitation. The report also speaks in terms of a temporary-sounding "developmental stage" and not as if Smith were exhibiting signs of some sort of long-term intellectual difficulty. If Smith were suffering from some sort of intellectual disability or mental deficiency, it seems likely those issues would have been listed here. They were not.

Next, at R. 346, there is a "Standardized Test Data (Ability)" form from Smith's school records. R. 346. The form is dated "9-7-72" and indicates Smith's "Total I.Q." was 93, a score well within a normal range. Again, it seems that if there were evidence to support Smith's claims of his early intellectual disabilities, that type of evidence would have been present in his early IQ scores. It is not. It is Smith's burden to prove that he met the criteria to qualify under the listing and he has not met that burden here. 42 U.S.C. § 423(d)(5)(A).

Even if we accept as true Smith's claims that he was in special education classes and that he never learned to read or write, his statements alone are not "conclusive evidence of a

7

disability." Id. Smith must also provide "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques." Id. This Smith has also failed to do.

  b. Medical Opinions

The medical evidence in this case overwhelmingly supports the ALJ's conclusion that Smith did not have an intellectual disability that would meet the listing under § 12.05(C). In this case, the ALJ relied upon three medical professionals to help her come to the conclusion that Smith's alleged intellectual limitations were not disabling.[4]

First, on February 3, 2011, state agency physician David S. Leen, Ph.D., evaluated Smith. Dr. Leen found Smith to be "correctly oriented to time, place, person, and situation." R. 511. Smith's "thought processes appear[ed] concrete, relevant and logical." Id. Despite his "less than average functioning in the areas of abstract thinking, and attention, and concentration," Dr. Leen concluded that Smith was able to "consistently perform the most simple, repetitive work activities in a timely and appropriate manner" and that he was able to "maintain reliable attendance in a workplace." R. 511, 513. Smith was also able to "deal with the usual stressors of competitive work" and do so "without interruptions from his depressive symptoms and cognitive limitations." R. 513.

Next, in September 2012, Smith was referred to Roger DeLapp, Ph.D., for a consultative psychological examination. Despite accepting Smith's claims that he could not read or write without independently verifying those claims, Dr. DeLapp nevertheless concluded that Smith "has some statistically significant strengths in working memory and processing speed." R. 581. Dr. DeLapp also determined that Smith had no limitations in understanding and remembering

---

[4] Robert E. Cassidy, M.D., also evaluated and treated Smith. However, Dr. Cassidy's opinions relate only to Smith's alleged physical limitations, not his intellectual limitations. R. 495–507. Neither party argues that Dr. Cassidy's opinions are relevant to any determination regarding Smith's intellectual ability. Therefore, Dr. Cassidy's opinions are not considered in this section of the analysis.

simple instructions, in carrying out simple instructions, and in his ability to make judgments on simple work-related decisions. R. 583. He had mild limitations in his ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. Id. Smith was not limited in his ability to interact appropriately with others in the workplace. R. 584.

Finally, the ALJ sent the entire evidentiary record to Gary Bennett, Ph.D., for a comprehensive review. After reviewing the record, Dr. Bennett concluded that Smith did not meet the listing requirements for § 12.05(C). R. 594–95. Dr. Bennett questioned some of Dr. DeLapp's conclusions about Smith since Dr. DeLapp did not perform any sort of independent testing to substantiate Smith's IQ score or his claim of illiteracy. R. 594. Dr. Bennett also concluded that the evidentiary record did not support Smith's claims that he was in special education classes in school, and did not indicate that he was ever tested for or found to have an intellectual disability during his developmental period. Id. After considering all of the evidence in this case, Dr. Bennett concluded that Smith would likely be limited "to simple, repetitive, 1-2 step tasks in a work environment in which he would not be faced with strict high production demands." R. 595.

While none of these records provides a historical indicator of Smith's abilities prior to age 22 – all of the reports were written well after Smith's twenty-second birthday – their findings of only mild mental limitations support the ALJ's conclusion that Smith did not suffer from a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" that would be required to meet the listing in § 12.05.

    c. <u>Past Relevant Work Experience & Adaptive Functioning</u>

9

A claimant's past work experience may also be relevant to the consideration of his level of adaptive functioning when determining whether he meets the §12.05(C) listing. Hancock v. Astrue, 667 F.3d at 475. Smith reported that he voluntarily left school when he found work as a mechanic. R. 57. Smith also testified that he worked for most of his life as a mechanic and for some time as a mobile home setter. Id. While he did report that he lost some jobs because of his prior substance abuse issues (R. 579), he did not report any difficulty finding or keeping a job due to his alleged intellectual limitations. In fact, Smith reported that he worked as a mechanic from 1995 until 2008. R. 278. Smith also testified at the hearing that he lived with his girlfriend and that he previously had a driver's license, which he lost following a DUI conviction. R. 50–51. He also stated that he could take care of his personal needs without prompting, did not need reminders about taking his medication, could pay bills, count change, and handle a savings account. R. 288–90. All of these facts support the ALJ's conclusion that Smith did not suffer from significant deficits in adaptive functioning prior to his twenty-second birthday.

It is not the task of this court to determine whether evidence existed to support a conclusion different from that of the ALJ. If substantial evidence supports the ALJ's conclusions, then I must affirm the ALJ's decision. Substantial evidence is less than a preponderance and more than a scintilla. Having reviewed the record myself, I find that there is substantial evidence to support the ALJ's determination that Smith did not meet or equal the listing requirements for a disability under § 12.05(C).

**Treating Source Opinion**

Next, Smith argues that the ALJ erred by improperly discrediting the treating source opinion of Robert E. Cassidy, M.D., who concluded both that Smith was disabled and that he should be limited to sedentary work. The ALJ's error was critical, Smith claims, because a

finding that Smith was limited to sedentary work would necessarily require a finding that he was disabled under the medical vocational guideline 201.17.

The complete contents of Dr. Cassidy's "to whom it may concern" note are as follows. "This is to certify that James T [sic] Smith was seen in my clinic on 10/29/2010. He is disabled and not able to work. Please feel free to contact my office if you have any questions or concerns. Thank you for your assistance in this matter. Sincerely, Dr. Robert Cassidy MD." R. 498. The note is dated October 29, 2010 and followed Smith's first visit to the clinic in which he complained of middle and lower back pain that radiated into his legs. R. 495.

The ALJ acknowledged Dr. Cassidy's opinion, but gave it no weight. R. 21. The ALJ found the opinion to be "quite conclusory" and noted that it provided "very little explanation" of the information relied upon in coming to such a conclusion. Id. Additionally, the ALJ stated that a conclusion as to whether a claimant is disabled "is an administrative finding that requires familiarity with the Regulations and legal standards set forth therein and is an issue specifically reserved to the Commissioner." Id. I find that, based on the record, the ALJ was justified in giving Dr. Cassidy's opinion no weight, and that the remainder of the ALJ's decision as a whole is supported by substantial evidence.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following

11

factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

In determining what weight to give to Dr. Cassidy's opinion, the ALJ expressly considered factor (3). In considering factor (3), the ALJ concluded that the opinion was not supported by medical evidence because in the same visit at which Dr. Cassidy concluded that Smith was disabled, he also recommended that Smith seek training for sedentary work. R. 21; R. 495; R. 498. A valid conclusion that a person is disabled would preclude all types of work, including sedentary work. Clearly, if Dr. Cassidy's medical opinion was that Smith could (and should) perform sedentary work, then his conclusion that Smith was disabled was not supported by his own medical evidence.

Though the ALJ's decision does not expressly address the other factors, the opinion establishes that the ALJ considered these factors in determining what weight to give Dr. Cassidy's opinion. We know the ALJ considered all of the factors because the ALJ listed the factors in the paragraph immediately before addressing what weight to give Dr. Cassidy's opinion. R. 21. The ALJ's opinion also clearly references Dr. Cassidy's treatment records, which the ALJ obviously reviewed. These records provided the ALJ with ample details to use in evaluating the remaining factors.

First, Dr. Cassidy's records reveal the length of treatment, frequency of examination, and the nature and extent of the treatment relationship, satisfying factors (1) and (2). Dr. Cassidy is a medical doctor at Carilion's Rocky Mount Orthopedics and Podiatry office who evaluated Smith's complaints of back pain. Second, the records reveal that the nature and extent of the treating relationship was minimal. Dr. Cassidy saw Smith on October 29, 2010 and again on December 3, 2010. R. 495–507. Dr. Cassidy made some adjustments to Smith's medications and recommended that he attend physical therapy for his pain. This doctor-patient relationship lacked both depth and any extended duration. Third, the opinion's inconsistency with the record as a whole is clearly evident after a thorough review of the record. When the ALJ considered Dr. Cassidy's opinion in the context of the other medical opinions available to her, the ALJ satisfied factor (4). Finally, these records identify Dr. Cassidy as a medical doctor with a specialization in orthopedics and podiatry, satisfying factor (5).

Dr. Cassidy's records make it clear that the treatment relationship between Dr. Cassidy and Smith was minimal, that Dr. Cassidy's conclusions regarding Smith's disability were not supported by his own medical findings or the other medical evidence in the record, and that Dr. Cassidy's opinion letter was a conclusory legal determination of an issue solely within the Commissioner's realm of expertise. Given these findings, the ALJ's failure to explicitly address all five factors in her opinion was a harmless error that does not justify remand.

This error was harmless because even if we accept Dr. Cassidy's conclusion that Smith was limited to sedentary work because of his physical limitations, Smith would still have to satisfy the other requirements of medical vocational guideline 201.17. A finding that Smith was limited to sedentary work, by itself, would not have triggered a finding that he was disabled. Rule 201.17 indicates that a person age 45–49 who is illiterate or unable to communicate in

English and whose previous work experience is "unskilled" or "none" is entitled to a finding that he or she is disabled. 20 C.F.R. Pt. 404, Subpt. P., App'x 2, § 201.00(h)(1). First, at the time of his alleged onset date, Smith was 43 years old and not within the 45–49 age range.[5] Additionally, the ALJ did not conclude that Smith was illiterate; Smith stated in his application for benefits that he could read and understand English and that he could write more than his name in English. R. 263. Finally, Smith's previous work experience was not "unskilled" – the VE testified that Smith's previous work as a mechanic was "skilled, medium" according to the DOT. R. 62. Whether the ALJ should have made additional factual findings is not an issue raised in this appeal. Therefore, those issues are waived. Any finding that Smith should have been limited to sedentary work based on Dr. Cassidy's opinion was harmless because it would not have changed the ALJ's conclusion that Smith was not disabled. Smith still would not have satisfied the other requirements in the applicable medical vocational guidelines.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion for summary judgment is **GRANTED**, Smith's motion for summary judgment is **DENIED**.

---

[5] A decision of disabled "may be appropriate for some individuals under age 45 (or individuals age 45-49 for whom rule 201.17 does not direct a decision of disabled) who do not have the ability to perform a full range of sedentary work. However, the inability to perform a full range of sedentary work does not necessarily equate with a finding of 'disabled.' Whether an individual will be able to make an adjustment to other work requires an adjudicative assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base. It requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience, including any transferable skills or education providing for direct entry into skilled work." 20 C.F.R. Pt. 404, Subpt. P., App'x 2, § 201.00 (h)(3). This alternative method of satisfying this rule are not addressed in Smith's brief and are therefore not addressed here.

Entered: March 7, 2016

*Robert S. Ballou*
Robert S. Ballou
United States Magistrate Judge